Case 2:24-cv-00124   Document 11   Filed on 08/29/24 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
August 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT S. VISINTINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00124 |
| | § | |
| NAVYARMY COMMUNITY CREDIT UNION, | § | |
| | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Robert S. Visintine, proceeding *pro se* and *in forma pauperis*, filed this action against NavyArmy Community Credit Union ("Defendant"), alleging that Defendant violated the Racketeering Influenced and Corrupt Organizations Act[1] and the Declaratory Judgment Act.[2] (Doc. No. 1.) For the reasons discussed below, the undersigned recommends that the district court DISMISS Plaintiff's lawsuit as frivolous and for failure to state a claim upon which relief may be granted.

### A. *Jurisdiction.*

This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636. Plaintiff brings this suit pursuant to 18 U.S.C. § 1964(c). *See* Doc. No. 1, p. 2 ¶ 1; *id.* at 16 ¶ 42. Plaintiff also contends that the Court has jurisdiction under 28 U.S.C. § 2201(a) to "declare the legal rights of any interested party seeking such declaration . . . ." *Id.* at 2 ¶ 1.

---

[1] 18 U.S.C. § 1961 *et seq.* ("RICO").

[2] 28 U.S.C. § 2201 *et seq.*

### B. *Plaintiff's allegations and legal claims.*

Plaintiff's lawsuit, in essence, alleges that Defendant wrongfully interfered with his bank account, causing him to be unable to receive his Social Security disability payments. Defendant's actions, he says, were deceptive business practices rising to RICO violations.

By his own account and liberally construed, Plaintiff, who states that he is a two-time cancer survivor, alleges seven different ways in which Defendant's business practices were deceptive. Liberally construed, Plaintiff appears to be claiming that Defendant has engaged in a pattern of racketeering activity comprised of the seven "causes of action" described in his complaint (which the undersigned construes as alleged predicate acts). With one exception, all occurred within one month's time, and many allegedly occurred on the same day:

- Breach of contract: Plaintiff alleges that around May or June of 2022, Defendant breached its depositary contract with Plaintiff by "changing and/or terminating" Plaintiff's checking account without notifying him of that change. (Doc. No. 1, p. 5 ¶¶ 9-12.) He alleges that Defendant "changed the terms of the contract using deceit, fraud, and identity theft when they knowing[ly] and intentionally reported [Plaintiff's] bank card lost or stolen without his knowledge or consent." *Id.* ¶ 10. Defendant did so intentionally, Plaintiff claims, "to deny [Plaintiff] access to his Social Security direct deposit." *Id.* ¶ 11.

- Identity theft: Plaintiff alleges that Defendant misused his social security number without his consent. (Doc. No. 1, pp. 5-7 ¶¶ 13-18.) He claims that on or about June 27, 2022, he was out of town and needed to rely on his Social Security direct deposit to pay for room and board. *Id.* at 6 ¶ 15. Plaintiff states that he called Defendant to verify that his Social Security payment had been deposited and credited, and that he was assured that it had

been credited and that his balance was $861.01. *Id.* ¶ 16. But that same day, Plaintiff "tried to use his bank card to withdraw money from an ATM in San Antonio, Texas, and the transaction was denied because the card was reported lost or stolen." *Id.* ¶ 17. Plaintiff states that he had not reported the card lost or stolen. *Id.* Plaintiff claims that he called Defendant to ask what had happened but was told that he needed to come to the bank to get the card replaced. *Id.* This, Plaintiff says, was a "knowingly and intentional false statement," because Defendant had already converted Plaintiff's checking account to a savings account, in violation of his depositary contract. *Id.* ¶ 18.[3]

- <u>Interfering with the due administration of Social Security benefits</u>: Plaintiff alleges that Defendant's act of converting his checking account to a savings account interfered with Plaintiff's ability to access his Social Security benefits. (Doc. No. 1, p. 7 ¶¶ 19-20.) He alleges that on or about June 27, 2022, Defendant directed him to go to a Security Service Federal Credit Union branch to make a withdrawal (apparently because Plaintiff had been unable to use his ATM card to access his NavyArmy account). *Id.* ¶ 19. Plaintiff then tried to make a $300 withdrawal at Security Service but could not: Security Service allegedly told Plaintiff that his available balance was only $212.64, not the $861.01 that Plaintiff claims to have been told he had. Plaintiff then tried to make a $200 withdrawal at Security Service, but Defendant allegedly declined that withdrawal for an unspecified reason. (*Id.* ¶ 19-20.)

- <u>Wire fraud, fraud, deceitful business practice</u>: Plaintiff alleges that he was publicly embarrassed and humiliated by Defendant's action of declining the $200 withdrawal.

---

[3] Plaintiff does not specifically allege how his social security number was used: it is possible that he is claiming that Defendant used the number to convert Plaintiff's checking account to a savings account. *See* Doc. No. 1, p. 7 ¶ 19.

3 / 19

(Doc. No. 1, p. 8 ¶ 21.) He claims that he called Defendant at about 5:30 p.m. on June 27, 2022 and was told that his balance was now only $12.64. *Id*. Plaintiff alleges that he asked what had happened to his $861.01 balance from several hours before, and that a representative of Defendant replied that there had been two withdrawals on the account. One of these had been a $521.37 "charge off" from three years prior. *Id*. Plaintiff alleges that the prior setoff "thereby create[ed] a pattern of Racketeering Influenced and Corrupt Organization practices lasting for over a year and creating jurisdiction under the Civil RICO statutes for recovery of damages." *Id*. Plaintiff claims that he had never been informed of any charge off. He also claims that even if a "charge off" or "set off" were to have happened, Defendant wrongfully deducted money from his account because such deductions are allegedly permitted to occur within 30 days money is deposited in the account – far less than the three years Defendant's representative stated. *Id*.

- <u>Theft, wire fraud, fraud by racketeering and corrupt organizational practices</u>: Plaintiff alleges that on June 27, 2022, Defendant "knowingly and intentionally devised and carried out a scheme to defraud [Plaintiff] out of money, by and through directly or proximately canceling his bank card without his consent or knowledge." (Doc. No. 1, p. 9 ¶ 22.) He claims that Defendant declined his Security Service withdrawal, but still debited the $200 from Plaintiff's account through the use of interstate wire communications by means of false pretenses. *Id.* As a result, he claims, Plaintiff was "left without his Social Security benefits money to pay for his room and board while 3 hours from his home, and unable to pay his bills for a month…." *Id.* ¶ 23. Plaintiff broadly alleges "fraud by racketeering influenced and corrupt organization practices," *id*. at 8 ¶ 21, but does not specifically state how this is so. *See id*. at 9 ¶ 23.

- <u>Denial of due administration of Social Security benefits</u>: Plaintiff alleges that Defendant's act of converting his account to a savings account and changing the account number had the effect of causing the suspension of Plaintiff's Social Security benefits for approximately 27 days, and denied him the "due administration of his Social Security benefits in a timely manner for a second month." (Doc. No. 1, pp. 9-10 ¶ 24.)

- <u>"Fraud, deceptive, and dishonest business practice"</u>: Plaintiff claims that Defendant failed to abide by its stated policy of making direct deposit funds immediately available by preventing and delaying Plaintiff's June 27, 2022 Social Security benefit deposit, and that Defendant "intentionally and knowingly did not make timely entries and then made misleading statements and/or out right lies" to Plaintiff concerning the status of his account. (Doc. No. 1, pp. 9-10 ¶¶ 25-27.)

C. *Plaintiff's requested relief.*

Plaintiff seeks more than $15 million in damages, apportioned as follows:

- $6,000 for the "unnecessary work" that Plaintiff was allegedly forced to do, to resolve the account situation, along with various bank fees he was required to pay in order to obtain account statements, overdraft fees, and travel and phone expenses;

- $5 million in mental and emotional damages for the "extreme public embarrassment and humiliation, to include the fear and anxiety of losing his Social Security and sustenance for living;"

- $10 million in "exemplary punitive damages" to "deter and dissuade the Goliaths of the banking industries … from future abuses towards elderly and disabled customers on fixed incomes and unable to defend themselves or afford the professional services to seek

redress, but must succumb as a victim to the enormous influence and power of the banking industry."

(Doc. No. 1, pp. 13-15 ¶¶ 36-40.)  He additionally requests an award of attorney's fees, his court costs, and "any other damages the Court deems appropriate and just."  *Id.* at 16 ¶¶ 42.

### D. Standard of review for screening of Plaintiff's complaint.

Plaintiff is proceeding *in forma pauperis*, so his complaint is subject to the provisions of section 1915(e)(2)(B) of Title 28, United States Code.  That statute imposes a screening responsibility upon the district court, and provides for *sua sponte* dismissal of a complaint if the court finds that the complaint, among other things, is frivolous or malicious or that it fails to state a claim upon which relief may be granted.  The Court may determine that Plaintiff's complaint must be dismissed under § 1915(e)(2)(B) at any time, before or after service of process and before or after the defendant's answer.  *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).[4]

A claim is "frivolous" if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (citations omitted).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

A complaint fails to state a claim upon which relief may be granted if its factual allegations are insufficient to raise a right to relief above the level of speculation.  *Bell Atlantic*

---

[4] Plaintiff served Defendant with process in this case, and Defendant has filed an answer.  (Doc. No. 9.)

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal for failure to state a claim is appropriate when the plaintiff has failed to plead enough facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Id.* (citations omitted).  Thus, dismissal is inappropriate "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that Defendants are liable.  *Id.*; *Twombly*, 550 U.S. at 556.  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  If the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, then Plaintiff's claim should not be dismissed.  *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review.  Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers.  *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions.  *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).  The complaint must state more than

"an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).

### E. Plaintiff's RICO claim should be dismissed.

The essence of Plaintiff's lawsuit is his allegation that Defendant is engaged in a "pattern of racketeering activity." (Doc. No. 1, p. 2 ¶ 1.) Plaintiff's RICO allegations fall far short of the required level of plausibility and should be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

#### 1. Law.

RICO provides for a civil suit by any person "injured in his business or property by reason of a violation of [18 U.S.C. § 1962] … and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Liberally construed, Plaintiff alleges that Defendant has violated 18 U.S.C. 1962(c) by engaging in a pattern of racketeering activity. (Doc. No. 1, pp. 2 ¶ 1; *id.* at 4 ¶ 6; *id.* at 8 ¶ 21.) That provision makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Section 1961(1) of Title 18, United States Code, defines "racketeering activity" as including various types of criminal acts. As relevant to Plaintiff's allegations in this case, the definition includes fraud related to identity documents under 18 U.S.C. § 1028 and wire fraud under 18 U.S.C. § 1343. "'A pattern of racketeering activity consists of two or more predicate acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *State Farm Mutual Auto. Ins. Co. v. Misra*, 658 F. Supp. 3d 352, 372 (W.D. Tex. 2023) (quoting *Snow*

*Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524 (5th Cir. 2016)); *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam).  The predicate acts must be criminal acts.  *See Snow Ingredients*, 833 F.3d at 524.

A plausible claim of section 1962(c) violation must allege that the defendant "engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity'" or collection of unlawful debt.  *See Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted)).  RICO claims "have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."  *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).[5]

To establish the "pattern" element, a plaintiff must "show both a relationship between the predicate offenses … and the threat of continuing activity."  *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 94 F.4th 198, 205 (5th Cir. 2024) (citing *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016)).  Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated

---

[5] Plaintiff does not allege that Defendant engaged in the collection of unlawful debt.  Even if he had, though, his claim would be subject to dismissal.  The term "unlawful debt" in the RICO setting means:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).  Plaintiff's RICO claim does not relate to any debt related to gambling activity, and he does not allege the existence of any loan made at a usurious rate of interest.  *Cf. LeBranche v. Nestor I, LLC*, Civ. No. 19-8399, 2019 WL 13222969, at *6 (E.D. La. Apr. 29, 2019) (plaintiff failed to state RICO "unlawful debt" claim because the alleged debt did not involve either gambling activity or usury).

by distinguishing characteristics and are not isolated events." *D&T Partners*, 94 F.4th at 205 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (cleaned up)).

A RICO plaintiff can prove "continuity," meanwhile, by alleging either a "closed period of repeated conduct" or long-term unlawful "past conduct that by its nature projects into the future with a threat of repetition." *D&T Partners*, 94 F.4th at 205-06; *see also H.J., Inc.*, 492 U.S. at 241. "Courts have stressed that a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities is not the type of racketeering pattern RICO seeks to prohibit." *Id.* at 207 (cleaned up) (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) and *Efron v. Embassy Suites, Inc.*, 223 F.3d 12, 19 (1st Cir. 2000)).

### 2. *Plaintiff fails to plausibly allege a pattern of racketeering activity.*

Plaintiff's RICO claim is not especially easy to follow. Liberally construed, Plaintiff appears to be claiming that Defendant has engaged in a pattern of racketeering activity comprised of the seven "causes of action" described in his complaint (which the undersigned construes as alleged predicate acts). But Plaintiff fails to plausibly allege a "pattern of racketeering activity." He mentions the concept of a pattern of racketeering activity, but does not plausibly allege facts that meet that term's definition. Plaintiff fails to plausibly identify two or more qualifying predicate criminal acts that were related to one another as a "pattern of racketeering activity."

The first of Plaintiff's seven construed predicate acts alleges breach of contract. (Doc. No. 1, p. 5 ¶¶ 9-12.) Breach of contract is not a crime, and it is not listed among the activities that qualify as "racketeering activity" under 18 U.S.C. § 1961(1). Plaintiff's breach of contract allegation thus cannot serve as a predicate act for civil RICO purposes. *See Arruda v. Curves*

*Int'l, Inc.*, No. 6:20-cv-00092, 2020 WL 4289380, at *6 (W.D. Tex. July 27, 2020) (citing *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud.")).

Plaintiff also alleges, in two other "causes of action," that Defendant "interfer[ed] with the due administration of Social Security benefits," and "deni[ed] … the due administration of Social Security benefits." (Doc. No. 1, p. 7 ¶¶ 19-20; *id.* at 9-10 ¶ 24.) There does exist a federal statute that assigns criminal penalties for intimidating or impeding any officer or employee of the Social Security Administration from carrying out a duty under the Social Security Act. *See* 42 U.S.C. § 1320a-8b. But Plaintiff makes no such allegation here (he simply claims that he didn't get his benefits like he was supposed to) and in any event that statute is not among those listed in § 1961(1) as constituting "racketeering activity." These claims therefore also fail to plausibly allege qualifying predicate acts.

Likewise, Plaintiff's allegations of theft and of generic fraud and deceitful or dishonest business practices (*see* Doc. No. 1, p. 8 ¶ 21; *id.* at 9 ¶ 22; *id.* at 10-11 ¶¶ 25-27) do not qualify as RICO predicate acts. Section 1961(1) does not include theft,[6] generic fraud,[7] or deceptive business practices among its list of offenses that qualify as "racketeering activity." Those alleged acts therefore cannot serve as RICO predicate acts.

Plaintiff alleges wire fraud as a predicate act. (Doc. No. 1, p. 8 ¶ 21.) He alleges two instances of "wire fraud." These two instances both allegedly occurred on June 27, 2022: one

---

[6] Other than theft from interstate shipments (18 U.S.C. § 659) and theft of trade secrets (18 U.S.C. § 1832), which Plaintiff does not allege here.

[7] Section 1961(1) does list fraud in connection with access devices (18 U.S.C. § 1029), mail fraud (18 U.S.C. § 1341), financial institution fraud (18 U.S.C. § 1344), fraud in foreign labor contracting (18 U.S.C. § 1351), fraud in the use of visas (18 U.S.C. § 1546), fraud in bankruptcy sales under Title 11, and fraud in the sale of securities, but Plaintiff has not alleged any of those offenses. Section 1961(1) also includes wire fraud and identification document fraud, which are discussed further below.

was a wrongful setoff or charge-off stemming from some unspecified event that allegedly occurred three years prior. *Id.* at 8 ¶ 21. The other was apparently a wrongful debiting of $200 from Plaintiff's account on June 27, 2022 despite Defendant's declination of Plaintiff's attempt to withdraw that money at Security Service. *See id.* at 9 ¶ 22. Plaintiff alleges that the two withdrawals created a "pattern of Racketeering Influenced and Corrupt Organization practices lasting for over a year," which he claims create civil RICO jurisdiction. *Id.* at 8 ¶ 21. Wire fraud is included among the crimes that can qualify as racketeering activity, *see* 18 U.S.C. § 1961(1), but Plaintiff fails to plausibly allege wire fraud. Wire fraud, criminalized by 18 U.S.C. § 1343, requires proof of (1) a scheme or artifice to defraud, (2) the use of wire communications, and (3) specific intent to defraud. *See Bustos v. Invierte En Texas, LLC*, No. 4:22-CV-02690, 2024 WL 3364039, at *11 n.27 (S.D. Tex. June 3, 2024) (Palermo, M.J.), *adopted*, 2024 WL 3371041 (S.D. Tex. July 9, 2024) (citing *United States v. Deason*, 622 F. App'x 350, 353-54 (5th Cir. 2015)). Here, Plaintiff alleges intentional acts, but does not allege the existence of any scheme or artifice to defraud, much less that Defendant took any action with the specific intent to defraud him. At most, Plaintiff alleges negligent or inept conduct, but he does not plausibly allege a specific intent to defraud.

Plaintiff also alleges identity theft as a predicate act by virtue of Defendant's alleged use of Plaintiff's Social Security number to convert his checking account to a savings account, without his consent. (Doc. No. 1, pp. 5-7 ¶¶ 13-18.) But the use of a means of identification such as a Social Security number is not criminalized as identify theft unless it is done with the intent to commit, or in connection with, a violation of federal law or a state felony offense. *See* 18 U.S.C. § 1028(a)(7). In this case, Plaintiff alleges that he suffered loss from Defendant's alleged use of his Social Security number, but he does not plausibly allege that Defendant used

his number with the intent to commit any federal offense or state felony, or that Defendant used the number in connection with any other federal offense or state felony.

Even if Plaintiff's allegations could be stretched to divine an allegation of one or more predicate criminal acts such as wire fraud or identity theft, his allegations are still insufficient to plausibly allege a RICO claim, because Plaintiff does not plausibly allege a "pattern" of racketeering activity. Plaintiff attempts to bolt together Defendant's alleged June 2022 actions to form a creature comprised of predicate acts with an expansive-looking racketeering purpose, but Defendant's alleged actions essentially amount only, at worst, to scattered instances of unrelated close-in-time negligence: the alleged wrongful conversion of Plaintiff's account from checking to savings (and the alleged wrongful use of his Social Security number to do so); the withdrawal of $521.37 from Plaintiff's account to satisfy a three year-old setoff; and the mis-debiting of Plaintiff's attempted $200 withdrawal at Security Service.[8] Plaintiff does not allege that any of Defendant's acts amounts to or poses a threat of continued criminal activity. He alleges neither facts showing a "closed period of repeated conduct" nor facts indicating long-term unlawful "past conduct that by its nature projects into the future with a threat of repetition." All of the conduct that Plaintiff alleges has already occurred, and Plaintiff does not allege that any future conduct is anticipated, by virtue of Defendant's alleged past acts or otherwise. *Cf. Snow Ingredients*, 833 F.3d at 524. Plaintiff also does not allege the existence of any other victims of the racketeering activity besides himself; this is significant because "the idea of 'continuity' embraces 'predicate acts occurring at different points in time or involving different victims.'"

---

[8] Even if the three year-old setoff was wrongfully assessed to Plaintiff, he does not explain how the wrongful assessment of that setoff three years prior is related to Defendant's acts in June 2022.

*D&T Partners*, 94 F.4th at 206 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)).

Plaintiff fails to plausibly allege any predicate acts that qualify as racketeering activity. Nor does he plausibly allege any pattern of such predicate acts. Accordingly, Plaintiff's RICO claim is insufficiently pled and should be dismissed.

### F. To the extent Plaintiff's other allegations could be viewed as standalone claims, the district court lacks jurisdiction over them. The district court should also decline to exercise supplemental jurisdiction.

If Plaintiff's "causes of action" could be liberally construed as standalone claims instead of RICO predicate acts, dismissal would still be appropriate. Plaintiff claims that Defendant has engaged in breach of contract (Doc. No. 1, p. 5 ¶¶ 9-12), identity theft (*id.* at 5-7 ¶¶ 13-18), interference with and denial of the due administration of Social Security benefits (*id.* at 7 ¶¶ 19-20; *id.* at 9-10 ¶ 24), wire fraud and deceitful business practices (*id.* at 8 ¶ 21), theft (*id.* at 9 ¶¶ 22-23), and generic fraud (*id.* at 10-11 ¶¶ 25-27). To the extent that Plaintiff's remaining allegations could be construed as standalone claims untethered to Defendant's alleged racketeering, those claims should be dismissed as well.

Plaintiff's allegations of wire fraud, identity theft, and interference with or denial of Social Security benefits should be dismissed as standalone claims. The wire fraud statute, 18 U.S.C. § 1341, is a criminal statute, and it does not provide an individual with a private right of action. *See Tummel v. Milane*, Civ. No. 7:18-CV-339, 2019 WL 366708, at *6 (S.D. Tex. Jan. 30, 2019) (Alvarez, J.). The same is true with 18 U.S.C. § 1028. *See Reed v. Reed*, No. 3:22-cv-818, 2022 WL 1295302, at *2 (N.D. Tex. Apr. 14, 2022), *adopted*, 2022 WL 1289558 (N.D. Tex. Apr. 27, 2022) (collecting cases). And also with 42 U.S.C. § 1320a-8b, the statute criminalizing interference with officers performing duties pursuant to the Social Security Act.

*See Liu v. City of Allen*, No. 4:17-CV-00874, 2018 WL 2144363, at *4 (E.D. Tex. Mar. 12, 2018), *adopted*, 2018 WL 2129451 (E.D. Tex. May 9, 2018). Plaintiff therefore cannot bring a civil lawsuit under any of those statutes, and those allegations should all be dismissed to the extent they attempt to raise standalone claims.

Plaintiff's claims of breach of contract, deceptive trade practices, and fraud are state law claims – they do not arise under any federal statute, and thus do not trigger federal question jurisdiction under 28 U.S.C. § 1331. Nor do Plaintiff's claims qualify for diversity jurisdiction under 28 U.S.C. § 1332: Plaintiff is a citizen of Texas, and on the Civil Cover Sheet for this case he indicated that Defendant is also a citizen of Texas. (Doc. No. 1-1, Part III, Item 1.)

This Court therefore can consider Plaintiff's state law claims only if it exercises supplemental jurisdiction over them. Should the district court dispose of Plaintiff's RICO claim as recommended, it would still have discretion whether to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). The general rule in this circuit, however, is that state law claims should be dismissed when the federal claims to which they are pendent are dismissed. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *see also Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citing *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal-law claims are eliminated before trial . . . ."). Here, there is no federal interest in adjudicating Plaintiff's state law claims. No significant federal resources have been devoted to this Court's consideration of Plaintiff's state law claims, *cf. Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (citing common law factors of judicial economy, convenience, fairness, and comity in deciding whether to retain supplemental

jurisdiction over state claim), and there is simply no reason to retain this case in federal court. The district court should decline to exercise supplemental jurisdiction in this case, and instead should dismiss Plaintiff's state law claims without prejudice to his raising those claims in a state court. *Cf. Lucky Tunes #3, L.L.C. v. Smith*, 812 F. App'x 176, 184-85 (5th Cir. 2020) (dismissal of claim without prejudice, when based on decision not to exercise supplemental jurisdiction).

### G. The Court lacks jurisdiction under the Declaratory Judgment Act.

In addition to attempting to assert RICO jurisdiction and federal question jurisdiction, Plaintiff also seeks to invoke jurisdiction under the Declaratory Judgment Act. *See* Doc. No. 1, p. 2 ¶ 1. That statute cannot serve as a vehicle for obtaining relief in this case.

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not create a standalone cause of action, however. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *Edwards v. U.S. Bank Nat'l Ass'n*, No. 6:15-cv-02535, 2016 WL 4574585, at *5 (W.D. La. June 28, 2016), *adopted*, 2016 WL 4626252 (W.D. La. Sept. 1, 2016). Nor does the Act provide "an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Johnson v. United States*, 502 F. App'x 412, 419 (5th Cir. 2012) (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)). The Act "is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *Capital One v. Swisher-35 Ltd.*, No. 3:08-CV-1040, 2008 WL 4274499, at *2 (N.D. Tex. Sept. 17, 2008). An actual controversy capable of being adjudicated in the federal courts is required, for a declaratory judgment action relates to the

underlying federal cause of action. *See Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990).

Plaintiff's action here does not qualify for consideration under the Declaratory Judgment Act because he does not seek a declaration regarding any prospective conduct; rather, he requests only relief (only monetary relief, at that) for past alleged conduct. *See* Doc. No. 1, pp. 13-16 ¶¶ 36-41; *cf. Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (declaratory judgment action requires actual controversy between the parties). In order to demonstrate that a case or controversy exists to meet the Article III standing requirement for obtaining declaratory relief, a plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future. *See Bauer v. Texas*, 341 F.3d 352, 258 (5th Cir. 2003). "In other words, '[a] claim for declaratory judgment seeks to define the legal rights and obligations of the parties in anticipation of some future conduct, not to proclaim liability for a past act.'" *Tex. Mutual Ins. Co. v. Kinsale Ins. Co.*, No. 1:19-cv-529-LY, 2019 WL 6171059, at *3 (W.D. Tex. Nov. 20, 2019), *adopted*, 2019 WL 9633379 (W.D. Tex. Dec. 6, 2019) (quoting *Haggard v. Bank of the Ozarks, Inc.*, 547 F. App'x 616, 620 (5th Cir. 2013)); *see also Hillwood Development Co., L.L.C. v. Related Companies, Inc.*, No. 3:04-CV-1100-L, 2006 WL 1140472, at *8 (N.D. Tex. Apr. 28, 2006).

In any event, as discussed above, Plaintiff's RICO claim must be dismissed because it is frivolous and fails to state a cause of action. And even construing his other allegations liberally, Plaintiff articulates no other claim over which a federal court would have jurisdiction. Because the Declaratory Judgment Act is merely a vehicle for adjudication of justiciable controversies, the absence of any such controversy in this case renders the Act inapplicable. *Cf. Edwards v.*

*Burwell*, 657 F. App'x 242, 246 (5th Cir. 2016) (unpublished) (affirming dismissal of action for declaratory judgment where district court had properly dismissed the underlying claims).

### H. Leave to amend?

The undersigned has recommended dismissal of Plaintiff's claims. Plaintiff is proceeding *pro se*, and ordinarily "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2016); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). But leave to amend is not required where amendment would be futile – that is, where an amended complaint would still fail to survive a Rule 12(b)(6) motion. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

Here, Plaintiff's factual allegations fall far short of a plausible RICO claim, and the undersigned doubts that, given the facts as currently understood, Plaintiff could amend his complaint to articulate such a plausible claim. But this memorandum and recommendation allows Plaintiff 14 days in which to explain how he would cure the deficiencies identified above and thus demonstrate to the Court why his case should not be dismissed with prejudice and that the Court should instead grant Plaintiff leave to amend his claims. *Cf. Parham v. Wayne McCollum Detention Ctr.*, No. 3:22-cv-2790-G-BN, 2023 WL 2504910, at *6 (N.D. Tex. Jan. 10, 2023), *adopted*, 2023 WL 2518853 (N.D. Tex. Mar. 14, 2023) (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires … but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects.")). The district court should therefore decide whether to grant leave to amend only after reviewing any objections to this memorandum and recommendation.

### I. Conclusion and recommendation.

The district court should DISMISS Plaintiff's action. The district court should grant Plaintiff leave to amend his complaint only if he explains, through any response to this memorandum and recommendation, how he would amend his complaint to cure the identified deficiencies. If leave to amend is denied, dismissal of Plaintiff's RICO claim should be with prejudice, but his construed state law claims should be without prejudice.

### J. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Plaintiff shall be served by certified mail, return receipt requested. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on August 29, 2024.

_____
MITCHEL NEUROCK
United States Magistrate Judge